**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **C.F. and I.F.**

**No. 25-5** (Ohio County CC-35-2023-JA-141 and CC-35-2023-JA-142)

**MEMORANDUM DECISION**

Petitioner Mother K.F.[1] appeals the Circuit Court of Ohio County's December 9, 2024, order terminating her parental rights to C.F. and I.F., arguing that the circuit court erred in denying her a post-adjudicatory improvement period and terminating her rights.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In 2021, the DHS filed an abuse and neglect petition alleging that the petitioner engaged in domestic violence with the father, abused substances, and suffered from untreated mental health issues. Both parents successfully completed post-adjudicatory improvement periods, regaining custody of C.F. and I.F. in January 2023. Less than a year later, in November 2023, the DHS filed another abuse and neglect petition alleging that the parents again exposed the children to domestic violence. Specifically, the children disclosed that the petitioner had threatened to stab the father in the throat with a knife, used a car to run over his foot, and poured bleach on his clothes. According to the DHS, because of the turmoil within the household, both children manifested severe dysfunctional behaviors and repeatedly fell asleep in school. The DHS also alleged that the petitioner was abusing substances and failed to properly treat her mental health issues.

At the adjudicatory hearing in April 2024, the petitioner stipulated to engaging in domestic violence and to her mental health issues. The circuit court accepted her stipulation and adjudicated her of abusing and/or neglecting both children. The petitioner then filed a motion for a post-adjudicatory improvement period, which the DHS and the guardian ad litem opposed. The circuit court held a hearing on the matter, at which the DHS presented evidence of the petitioner's history with Child Protective Services ("CPS"), including multiple referrals for substance abuse and domestic violence that ultimately led to the 2021 case. The DHS presented evidence of the petitioner's prior participation in drug and alcohol classes, parenting classes, marital counseling,

---

[1] The petitioner appears by counsel Michael B. Baum. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Lee Niezgoda. Counsel Tejinder Singh appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

anger management classes, and mental health counseling. Despite being afforded the benefit of these services, the petitioner admitted that she stopped taking her prescribed medication and resumed abusing illegal drugs upon the dismissal of the case in January 2023. The petitioner stated that after the filing of the instant petition, she initially attempted to resume taking her prescribed medication and engage in counseling but ultimately stopped as she felt it was not working, informing the court of her intention to attend a new counseling program instead. The petitioner believed that a different program and medication would help treat her new diagnosis of unspecified personality disorder with borderline and anti-social traits, unlike the services she attended before. The DHS expressed concern that the petitioner was not committed to meaningful participation in mental health services as she wrote that her reason for attending her recent psychological evaluation was because "CPS is a crock of sh--" on her intake form. Further, the petitioner minimized the domestic violence in the home, claiming that the children were exaggerating, and repeatedly blamed the father for her actions. The petitioner opined that the couple merely argued occasionally and denied that the children suffered any negative effects from witnessing their arguments. Ultimately, the circuit court denied the petitioner's motion, finding that she was unlikely to participate in an improvement period.

At the dispositional hearing in November 2024, the DHS reiterated that despite receiving the benefit of a post-adjudicatory improvement period and services in the prior case, the same issues of domestic violence, substance abuse, and mental health resurfaced. The DHS highlighted the close timeline between the dismissal of the 2021 case and the instant matter, along with the petitioner's failure to properly treat her mental health issues, arguing that this showed a lack of sincere effort in correcting the conditions of abuse and neglect. Additionally, the testimony of the children's foster parent established that as a result of witnessing the domestic violence between their parents, the children had reoccurring nightmares of their mother hitting the father with a car, threatening to stab or slice his throat, and making suicidal statements. According to the children's psychologist, the children's trauma manifested in their behaviors as C.F. became violent towards others, repeatedly making homicidal or suicidal statements, and I.F. displayed mood regulation issues. Both children also persistently engaged in bed wetting despite their older age. The petitioner testified that she had begun a new treatment program for her mental health and was obtaining a divorce from the father, yet the circuit court remained unpersuaded by this contention. Further, the petitioner still minimized the instances of domestic violence, insisting that the couple merely argued and continued to blame the father for her actions.

Based on the evidence, the circuit court concluded that it did "not believe the [petitioner] will make any meaningful change; rather, like the first case, [the petitioner] will simply go through the motions and do everything [t]hat is required of [her], without making any actual or meaningful changes or improvements." As such, the circuit court found that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect, as she demonstrated an inadequate capacity to solve the problems of abuse or neglect on her own or with help. The court further found that termination was necessary for the children's welfare, as they "[had] suffered grievous psychological injuries with physical manifestations as a result of the turmoil in the household between the parents, and this interfered with [their] sleep, schooling, and

2

mental and physical health." Accordingly, the circuit court terminated the petitioner's parental rights to both children.[3] The petitioner now appeals from the circuit court's dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner argues that the circuit court erred in denying her a post-adjudicatory improvement period. We disagree. Under West Virginia Code § 49-4-610(2)(B), a parent *may* be granted an improvement period if they "demonstrate[], by clear and convincing evidence, that [they are] likely to fully participate in the improvement period." The 2021 case involved substantially similar conduct. Shortly after the dismissal of the 2021 case when the children were returned to her custody, the petitioner opted to discontinue mental health treatment as she stopped taking her prescribed medication, failed to participate in counseling, and again exposed the children to domestic violence. Only after the DHS initiated the instant matter did the petitioner attempt to address her mental health again, yet it is clear that the petitioner displayed insincerity in her willingness to participate in services, given her statement on why she attended the psychological evaluation. Further, the petitioner consistently failed to take responsibility for her actions, minimized the domestic violence she perpetrated in her home, argued that the children were merely exaggerating, and blamed the father for her anger. The petitioner also denied that witnessing the domestic violence negatively impacted the children, demonstrating a complete lack of awareness of the effect of her conduct.

We have stressed that a parent must first acknowledge the problem to receive an improvement period, as "[f]ailure to acknowledge the existence of the problem, . . . results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Therefore, we conclude that the circuit court had sufficient evidence to find that the petitioner failed to acknowledge the problem, rendering it untreatable, and, thus, the circuit court did not err in denying the petitioner a post-adjudicatory improvement period. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) ("The circuit court has the discretion to refuse to grant an improvement period when no improvement is likely.").

Finally, the petitioner argues that the circuit court erred in terminating her parental rights because there was a reasonable likelihood that she could substantially correct the conditions of abuse and neglect in the future as she was addressing her mental health issues and obtaining a divorce. Again, we disagree. According to West Virginia Code § 49-4-604(d), "'[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected' means that . . . the abusing adult . . . [has] demonstrated an inadequate capacity to solve the problems of abuse or neglect on [their] own or with help." Here, despite receiving a plethora of services to help address the mental health and domestic violence issues in the prior case, these same issues resurfaced less than a year after the case was dismissed. Given the repeated recurrence of these issues, the circuit court found that the petitioner was incapable of meaningful change. The circuit court was also

---

[3] The father's parental rights have been terminated. The children's permanency plan is adoption by their current placement.

unpersuaded by the petitioner's testimony that she was planning to divorce the children's father, and we decline to disturb such credibility findings on appeal. *See In re D.S.*, 251 W. Va. 466, --, 914 S.E.2d 701, 707 (2025) ("We review the circuit court's decision under . . . deferential standards . . . and do not . . . make credibility determinations."); *see also Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations."). Thus, there was ample evidence for the circuit court to find that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect in the near future. Furthermore, the circuit court found that the petitioner's abusive conduct detrimentally affected the children as she failed to acknowledge the extent and impact of her mental health issues and failed to benefit from services, making termination of her parental rights necessary for their welfare. Circuit courts are permitted to terminate parental rights upon these findings. *See* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child"); Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (permitting the termination of parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected" (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980))). Therefore, we conclude that the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 9, 2024, order is hereby affirmed.

Affirmed.

**ISSUED**: November 25, 2025

**CONCURRED IN BY**:

Chief Justice William R. Wooton
Justice C. Haley Bunn
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Senior Status Justice John A. Hutchison